# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CARRINGTON JOSHUA STURGIS,

    Plaintiff,

    v.

CHIEF OF SECURITY, et al.,

    Defendants.

Civil Action No.:  SAG-21-1536

## MEMORANDUM OPINION

Self-represented Plaintiff Carrington Joshua Sturgis, currently incarcerated at Western Correctional Institution ("WCI"), filed his Amended Complaint in this civil rights action against former Chief of Security Keith Arnold, Warden Ronald S. Weber, Correctional Officer Lieutenant Benjamin Wagner, Correctional Officer Sergeant Floyd Benson, and Correctional Officer II Barry Townsend on October 7, 2021.[1]  ECF No. 8.  Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on May 2, 2022.  ECF No. 29.  In response, Sturgis filed a Motion to Deny or Stay Summary Judgment, which the Court will construe as an opposition to Defendants' Motion.  ECF No. 31.  Defendants replied.[2]  ECF No. 32.  A hearing is not necessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons explained below, the Court will grant Defendants' Motion.

---

[1] The Clerk will be directed to amend the docket to reflect Defendants' full and correct names.

[2] On June 17, 2022, Sturgis submitted a surreply.  ECF No. 33.  However, unless otherwise ordered, a surreply is not permitted.  *See* Local Rule 105.2(a) (D. Md. 2021).  A surreply is permitted when the moving party, would be unable to contest any matters raised by the opposing party in their reply for the first time.  *See Lewis v. Rumsfeld*, 154 F. Supp.2d 56, 61 (D. D.C. 2001).  Defendants have not raised new matters for the first time in their reply except to the extent they respond to Sturgis's assertion that additional discovery is necessary.  Therefore, Sturgis's surreply will not be considered by the Court except as to the discovery issue.

**Background**

This case was reopened on October 22, 2021, following receipt of Sturgis's Amended Complaint. *See* ECF No. 10. Upon review of the Amended Complaint, the Commissioner of Correction, Lt. Smith, and Corizon Health were dismissed from this action. *Id.* Remaining are Sturgis's claim of excessive force against Officer Townsend and his claims against Chief Arnold, Warden Weber, Lt. Wagner, and Sgt. Benson for his placement in a "disciplinary cell" and the conditions he experienced there. *Id.*

**I.      Amended Complaint Allegations**

In his unverified Amended Complaint, Sturgis alleges that on January 20, 2021, while he was being escorted from recreation through WCI Housing Unit 4, Officer Townsend was "excessively tugging" on his left arm. ECF No. 8 at 2. In response to Sturgis's request to stop, Townsend held it tighter, prompting Sturgis, in pain, to stop walking. *Id.* Townsend dragged Sturgis to the ground and kicked him twice in the face and once in the genitals after telling him, "Don't no nigga tell me what to do." *Id.* Sturgis suffered blurred vision in his left eye, a bruised face, and a bloody nose lasting two days. *Id.* He was held in a disciplinary cell until January 23, 2021. *Id.* Sturgis asserts that he was never provided an explanation for his placement in a disciplinary cell and that Sgt. Benson did not complete an information report until January 28, 2021. *Id.* at 3. Lt. Wagner also signed off on his placement in the disciplinary cell. *Id.*

The disciplinary cell in which Sturgis was held did not have running water or a mattress, the lights were on at all times, and the window could not be closed. ECF No. 8 at 6-7. Additionally, Sturgis was denied hygiene products and his meals were thrown through the slot in paper bags without utensils. *Id.* at 7. Sturgis claims that Chief Arnold allowed him to be kept in this cell from January 23 to 25, 2021, without investigation or reason for the placement. *Id.* He

also asserts that Warden Weber failed to investigate his placement even after Sturgis filed a grievance. *Id.* Sturgis attached a grievance dated January 25, 2021. *Id.* at 4-5.

Sturgis requests that the use of "ASPA/Disciplinary cells" be discontinued, that an investigation of racial profiling and mistreatment of black inmates at WCI be conducted, that he be transferred to a facility outside the Western Region, and that he receive monetary damages. ECF No. 8 at 9.

## II.   Defendants' Response

On January 20, 2021, Officer Townsend was escorting Sturgis through Housing Unit 4 towards the Property Room and Strip Cage. ECF No. 29-2 at ¶ 4 (Townsend Decl.). At this time, Sturgis was a maximum-security inmate on administrative segregation. ECF No. 29-4 at ¶ 5 (Officer Lavin Decl.); *see also* ECF No. 29-5 at 22 (Notice of Assignment to Administrative Segregation dated October 16, 2020), 23 (Administrative Segregation Investigative Report). Due to Sturgis's security classification, he was handcuffed and Officer Townsend held Sturgis's upper arm to "control and assist the inmate during the escort" pursuant to institutional policy. ECF No. 29-2 at ¶ 4. According to Townsend, Sturgis was shouting to other inmates on the tier, pulling away, and disobeying orders to stop shouting and continue walking. *Id.* at ¶ 5. Sturgis stopped walking at a doorway and began screaming at Officer Townsend and forcefully pulling away. *Id.* Officer Lavin arrived to assist Officer Townsend in regaining control and they resumed the escort, each holding one of Sturgis's arms. *Id.* at ¶¶ 5-6; ECF No. 29-4 at ¶ 6. As they approached the Strip Cage, Sturgis again attempted to pull his arms free and refused to walk. ECF No. 29-2 at ¶ 6. When they crossed through the doorway, Sturgis lunged forward, causing himself and the two officers to fall to the ground. *Id.* The officers assisted Sturgis back to his feet and placed him in the Strip Cage. *Id.* Townsend denies striking Sturgis or verbally threatening him or seeing any

visible injuries on Sturgis following the fall. *Id.* at ¶¶ 7-8. Additionally, Townsend states that no use of force report was completed because no force was used against Sturgis. ECF No. 29-10 at 6.

As a result of Sturgis's behavior, Officer Townsend issued a Notice of Inmate Rule Violation ("NOIRV"), charging Sturgis with (1) engaging in a disruptive act, (2) disobeying an order, and (3) demonstrating disrespect, insolence, or use of vulgar language. ECF No. 29-5 at 2-3. In addition to the issues noted during the escort, Officer Townsend stated in the NOIRV that Sturgis refused to be strip searched until Sgt. Benson and Sgt. Gilman persuaded him to comply. *Id.* at 2.

The disciplinary hearing report notes that Sturgis moved for dismissal of the charges because he was not served within 24 hours of the alleged incident. *See* ECF No. 29-5 at 7. However, the report notes that WCI inmates on staff alert are not served with the NOIRV. *Id.* On February 5, 2021, the hearing officer found Sturgis (1) guilty of disobeying an order and demonstrating disrespect, insolence, or use of vulgar language and (2) not guilty of engaging in a disruptive act. *Id.* at 8. He was assigned 30 days of segregation, but the hearing officer imposed an alternative sanction of 30 days loss of phone privileges. *Id.* at 9.

The incident also prompted an Intelligence and Investigative Division investigation of the alleged excessive force. ECF No. 29-10 (IID Incident Report). Detective Sgt. A. Wilson interviewed Sturgis and Officer Townsend and reviewed the relevant reports, tickets, and medical records. *See id.* at 5-6. Wilson found that no evidence existed to support a criminal assault charge against Officer Townsend or to support Sturgis's allegations generally. *Id.* at 6.

Following the incident, Sgt. Benson recommended Sturgis be placed on Staff Alert in cell 4B2, which was approved by Chief Arnold. ECF No. 29-7 at ¶ 3 (Sgt. Benson Decl.); ECF No. 29-5 at 5, 14. Chief Arnold attests that he received a recommendation for the Staff Alert pursuant

to policy WCI.110.0006.1(O)(2)-(3), which he reviewed and approved.  ECF No. 29-6 at ¶ 3 (Arnold Decl.).  Staff Alert status, pursuant to WCI.110.0006.1, is a "temporary designation" alerting staff of inmates posing "a substantial threat to the security and order of the institution, or who threaten harm to staff or other inmates and are in need of special handling practices."  ECF No. 29-5 at 58.

While on Staff Alert, specific procedures are followed concerning searches, escort, cuffing, showers, and recreation pursuant to WCI.110.0006.1(P).  ECF No. 29-5 at 63-65.  The policy also dictates the distribution of meals and personal property (*id.* at 65-66):

> (4) Inmates must comply with the following procedures to receive their meal.  They must go to the rear of the cell, face the rear wall, and get on their knees.  The feed-up slot will then be opened and the meal placed in the cell.
>
> (5) All property will be taken initially, inventoried, and stored in the HU #4 Property Room.  Property will be issued according to the inmates behavior as documented on Appendix 5 of ID WCI.110.0006.1.  Hygiene items will be provided as needed.  The inmate will be placed in a jumpsuit and issued a mattress, unless those items are deemed to be a threat to the security of the inmate's housing area.

Every day between January 21 and 25, 2021, Lt. James Smith conducted "Staff Alert status reviews," which included evaluating Sturgis's behavior and speaking to staff about his behavior. ECF No. 29-3 at ¶ 4 (Lt. Smith Decl.).  Lt. Smith recommended he stay on staff alert until January 25, 2021, when he would be released if he had exhibited no negative behaviors for 48 hours.  *Id.*; *see* ECF No. 29-5 at 15-19.  These evaluations were reviewed and approved by Chief Arnold, though he did not meet with Sturgis personally to review his status.[3]  ECF No. 29-6 at ¶¶ 3, 4.

---

[3] The Staff/Behavioral Alert Designation Notice submitted by Sgt. Benson notes that in accordance with WCI.110.0006.1 Staff Alert Policy, after five days a supervisor shall review the case and either remove or continue the designation for an additional five days.  ECF No. 29-5 at 14.  Chief Arnold states that because Sturgis was not on Staff Alert for more than five days, he did not meet with him in person to review his status. ECF No. 29-6 at ¶ 4.

Case Management Specialist Jason D. Clise attests that a review of the WCI daily maintenance logs for January 2021 did not reveal any window or plumbing issues in cell 4B2; specifically, there were no requests for repairs to a cell window, plumbing, or heating during that time. ECF No. 29-9 at ¶ 3 (Clise Decl.). Clise states that the cell has the same crank-out window that is used in all housing units. *Id.* at ¶ 4. Visual inspection showed that, like other windows in the housing unit, the seal is not airtight and a "draft can be felt especially in windy conditions." *Id.* Due to its location, the cell does not receive as much external light as others. *Id.* at ¶ 5. Therefore, a light remains on for safety and institutional security. *Id.* The cell also has a hot water radiator the length of the outside wall, as well as a toilet and a sink. *Id.* at ¶ 4, p. 3-6. While on Staff Alert, an inmate in the cell would be allowed a mattress, underwear, a t-shirt, socks, and an orange segregation jumpsuit. *Id.* at ¶ 6. Inmates receive all their meals in a brown paper bag which contains slices of bread, bologna, cheese, a condiment, fruit or vegetable, and a carton of milk or juice. *Id.* This replaces the normal tray lunch with utensils which could be used as weapons or to block the security slot. *Id.*

Lt. Smith did not observe any injuries to Sturgis during this time, nor did Sturgis request any medical attention. ECF No. 29-3 at ¶ 5. Sgt. Benson also attests that he asked Sturgis if he needed medical attention immediately after the fall and he declined. ECF No. 29-7 at ¶ 5. A registered nurse makes daily rounds to Staff Alert cells to ask inmates if they have any medical concerns because they are not permitted any writing implements to submit sick calls. ECF No. 29-3 at ¶ 6. Registered Nurse Feyisara Job attests that they were assigned to make daily rounds in the segregation unit at the times relevant and that she saw Sturgis on January 20, 2021, prior to his transfer to 4B2 and after his transfer on January 21, 22, and 25, 2021. ECF No. 29-8 at ¶¶ 4-5. RN Job states there were not any visible injuries and Sturgis did not raise any issues during these

rounds.  *Id.* at ¶ 5.  After Sturgis was released from Staff Alert, RN Job also saw him for rounds on January 26, 2021, and he did not raise any issues then either.  *Id.* at ¶ 6.  However, on January 27, 2021, Sturgis was taken to the medical department for a sick call complaining of blurry vision in his left eye, which he stated was a result of being kicked in the eye by an officer on January 20, 2021.  *Id.* at ¶ 7.  Sturgis also then reported being kicked in the groin and that he "had hematuria for two days."  *Id.*  He did not report a nosebleed and refused a urine sample; a physical examination did not reveal any skin tearing, discoloration, or bruising.  *Id.*

**Standard of Review**

I.       **Motion to Dismiss or, in the Alternative, Motion for Summary Judgment**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphases added).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because Defendants filed a motion styled as a motion to dismiss, or in the alternative, for summary judgment, Sturgis was on notice that the Court could treat the motion as one for summary judgment and rule on that basis.

The Court is mindful that Sturgis is a self-represented litigant.  A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir.1990).  A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## II.  Federal Rule of Civil Procedure 56(d)

Federal Rule of Civil Procedure 56(d) provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition, the court may:
>
> (1) Defer considering the motion or deny it;
> (2) Allow time to obtain affidavits or declarations or to take discovery; or
> (3) Issue any other appropriate order.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)).  "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011), *rvs'd on other grounds*, (alteration in original) (citation omitted).  A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."  *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"  *Harrods*, 302 F.3d at 244 (citations omitted).  But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant."  *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court

'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008).  Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Here, Sturgis's opposition asserts that Defendants' motion should be denied because he has not had the opportunity to obtain the necessary facts.  ECF No. 31 at 1.  However, Sturgis fails in both his opposition and surreply to provide the requisite affidavit or any explanations regarding what essential facts would be obtained through discovery.  As such, he fails to establish that discovery would assist him in demonstrating that a genuine issue of material fact exists for trial. The Court will therefore proceed to the merits of Defendants' motion.

<strong>Discussion</strong>

Defendants assert that the Complaint should be dismissed or summary judgment should be granted in their favor because (1) Defendants are immune from suit in their official capacities, (2) Sturgis failed to state an excessive force claim against Officer Townsend, (3) Sturgis is not entitled to injunctive or mandamus relief, (4) Sturgis failed to state a due process claim concerning his Staff Alert assignment, (5) Sturgis failed to state a claim for unconstitutional conditions of confinement, (6) Sturgis failed to state a claim for denial of medical care, (7) Warden Weber is entitled to dismissal of all claims, and (8) each Defendant is entitled to qualified immunity.

**I.     Warden Weber**

Defendants contend that Sturgis failed to allege any personal participation by Warden Weber in the alleged constitutional violations.  ECF No. 29-1 at 33-34.  Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation.  It is well established that the doctrine of respondeat superior does not apply in § 1983 claims.  *See Love-*

*Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Sturgis's only allegation against Warden Weber is that he "oversees everything which takes place in W.C.I." and neglected to investigate the incident and asked Sturgis "to sign off knowing this was a continued threat to health, safety, & welfare." ECF No. 8 at 7. However, these broad and conclusory allegations are insufficient to demonstrate that Weber personally violated Sturgis's constitutional rights or that he tacitly authorized or was deliberately indifferent to the alleged constitutional violations of his subordinates. Accordingly, the Amended Complaint is dismissed as to Warden Weber.

## II. Excessive Force

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Boone v. Stallings*, 583 F.App'x 174, 176 (4th Cir. 2014) (per curiam) (quoting

*Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)).  In cases involving excessive force, the Court must determine: (1) "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm" – the subjective component, *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)); and (2) "whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious" – the objective component, *Boone*, 583 F.App'x at 176 (quoting *Williams*, 77 F.3d at 761).

To determine whether Officer Townsend acted maliciously or sadistically to cause harm, this Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response.  *Whitley v. Albers*, 475 U.S. 312, 321 (1986).  The absence of significant injury alone is not dispositive of a claim of excessive force.  *Wilkins v. Gaddy*, 559 U.S. 34 (2010).  The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm.  *Id*. at 38.

Here, in opposition to Townsend's affidavit which directly denies having kicked or hit Sturgis during the escort, Sturgis has not provided any evidence to support his assault allegation.[4] At most, he relies on a photograph attached to the IID report which he asserts shows he had a swollen eye.  *See* ECF No. 31-1 at 11; ECF No. 29-10 at 9.  However, there is no indication in the

---

[4] As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like respond to the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Kipps v. Ewell*, 53 F.2d 564, 566 (4th Cir. 1976).  A verified complaint, however, is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.  *Davis v. Zahradnick*, 600 F.2d 458, 459-60 (4th Cir. 1979).  Sturgis has neither provided a verified complaint nor any affidavit to support his opposition response.

report that this photograph was taken following the alleged assault.  Rather, the record shows that Townsend was escorting Sturgis through the housing unit while holding his upper arm, when Sturgis became disruptive and began pulling away from Townsend prompting the assistance of another officer, Lavin, to complete the escort.  Then, upon arrival at the strip cage, Sturgis lunged, causing all three to fall to the ground.  Townsend and Lavin then assisted Sturgis back to his feet.  Thus, based on the record, the Court cannot find that Townsend used any force against Sturgis.

Even if the Court were to consider the alleged "excessive tugging" to Sturgis's arm (ECF No. 8 at 2) and his assertion in his opposition that he had recently injured his left shoulder (ECF No. 31 at 2), there is no evidence that Sturgis suffered any further injury, that Townsend was aware of his shoulder injury, or that Townsend sought anything other than to gain Sturgis's compliance with the escort.  Therefore, to the extent Townsend's tugging is considered force, it was not excessive; instead, it was a good faith effort to maintain order.  Accordingly, Officer Townsend is entitled to summary judgment as to the excessive force claim.

### III.    Due Process

Defendants argue that Sturgis's assignment to Staff Alert does not invoke a protected liberty interest and cannot support a due process claim.  ECF No. 29-1 at 23.  The Fourteenth Amendment's Due Process Clause guarantees that no State shall "deprive any person of ... liberty ... without due process of law."  To bring a due process claim, a plaintiff must first show the existence of a protected property or liberty interest.  *Mathews v Eldridge*, 424 U.S. 319, 332 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  "[T]he Supreme Court has long recognized that a prisoner may have a state-created liberty interest in certain prison confinement conditions...."  *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015).  Imprisonment is a deprivation of a liberty interest, but it is constitutional, provided that the conviction is valid and "the conditions

of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see also Sandin v. Conner*, 515 U.S. 472 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest).

Although prisoners are entitled to due process when sanctions could affect the overall duration of their sentence, a prisoner does not have a right to due process before placement in a more restrictive housing placement unless the conditions impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (1995) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)); *Wilkinson v. Austin*, 545 U.S. 209, 210 (2005). Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily … fact specific" comparative exercise. *Beverati v. Smith*, 120 F.3d 500, 502-03 (4th Cir. 1997) (quoting *Sandin*, 515 U.S. at 483-84); *accord Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) ("There is no single standard for determining whether a prison hardship is atypical and significant, and the condition or combination of conditions or factors … requires case by case, fact by fact consideration." (alteration in original) (internal quotation marks omitted)). Harsh or atypical prison conditions in and of themselves do not provide the basis of a liberty interest giving rise to Due Process protection. *Prieto*, 780 F.3d at 250. Rather, there must exist an interest in avoiding "erroneous placement [in the challenged confinement] under the state's classification regulations *combined with* … harsh and atypical conditions" for Due Process protections to apply. *Id.* (emphasis in original) (citing *Wilkinson*, 545 U.S. at 224-25).

Assignment to administrative segregation ordinarily does not create an atypical and significant hardship. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983) (holding that administrative segregation is part of the ordinary incidents of prison life). Inmates also generally do not have a

liberty interest in obtaining a particular security classification. *Slezak v. Evatt*, 21 F.3d 590, 594 (4th. Cir. 1994). Moreover, there is no constitutional right for an inmate to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. *See Sandin*, 515 U.S. at 484; *see Meachum*, 427 U.S. at 224 (prisoners do not have a right to due process in their housing assignments).

Here, based on his failure to follow orders and his subsequent lunge causing him and his escorts to fall on January 20, 2021, Sturgis was put on Staff Alert pursuant to WCI.110.0006.1, a "temporary designation" distinct from administrative segregation. ECF No. 29-5 at 58. Sturgis argues that no medical or mental health personnel approved this placement and asserts it was a punishment. ECF No. 31 at 4. However, there is no requirement that a medical provider approve a Staff Alert designation, nor was it the result of his NOIRV. *See* ECF No. 29-5 at 62. Correctional institutions need to maintain order and discipline, and matters of security classification are reserved to the sole discretion of prison officials. *See Slezak*, 21 F.3d at 594; *Sandin*, 515 U.S. at 482 (stating that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment"). As such, Sturgis's Staff Alert designation does not entitle him to Due Process Protections, because he has no liberty interest in avoiding erroneous classification to Staff Alert. *See Prieto*, 780 F.3d at 250 (citing *Wilkinson v. Austin*, 545 U.S. 209, 224-25 (2005)). Defendants Arnold, Benson, and Wagner are therefore entitled to summary judgment.

### IV. Conditions of Confinement

Defendants contend that Sturgis has not alleged any serious physical or emotional injury resulting from the alleged conditions in the Staff Alert cell and therefore cannot demonstrate the objective element of a "conditions of confinement" claim. ECF No. 29-1 at 27. The Eighth

Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). Conditions of confinement that "involve wanton and unnecessary infliction of pain," or which "deprive inmates of the minimal civilized measure of life's necessities," may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id*. In order to establish the imposition of cruel and unusual punishment in conditions of confinement, a prisoner must prove two elements: that "'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that *subjectively* the officials act[ed] with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko*, 535 F.3d at 238 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

The objective prong of a conditions claim requires the prisoner to "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka*, 71 F.3d at 166 (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)). Thus, "a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year" violates the Eighth Amendment, even if "the complaining inmate shows no serious current symptoms." *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993); *Webb v. Deboo*, 423 F. App'x 299, 300 (4th Cir. 2011).

To establish a sufficiently culpable state of mind, there must be evidence of deliberate indifference, in that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 302-03 (applying the deliberate indifference standard to conditions of confinement claims). "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

Plaintiff has alleged that while on Staff Alert, he was without a mattress or running water, the window in his cell would not close, the lights were on all day, he was not provided hygiene products or medical care, and he received meals only in paper bags. ECF No. 8 at 6-7. Institutional records provided by Defendants demonstrate that no maintenance requests were logged as to the plumbing, heating, or functionality of the window at or near the time Sturgis was housed in the Staff Alert cell, and Sturgis has provided no evidence to support his allegations. Additionally, nothing in the record shows that he reported any of the problems in the cell to medical or correctional staff. Therefore, even if the conditions were as alleged, there is no evidence that any of the named Defendants were subjectively aware of the problems Sturgis allegedly encountered in the Staff Alert cell. His claim must therefore fail.

Furthermore, at most, Sturgis alleges he suffered sleep deprivation and mental anguish as the injuries resulting from the five days he spent in the Staff Alert cell under the conditions alleged. In his opposition, Sturgis further asserts that he was deprived of the inhaler he needs for his chronic asthma (ECF No. 31 at 3) but does not state what, if any, injury he suffered without access to his inhaler. He does not even allege that he notified any of the Defendants. Thus, even taking his allegations as true, the Court cannot find that Sturgis suffered a sufficiently serious deprivation or was at risk of such a serious deprivation that the conditions of the Staff Alert cell amounted to a

18

violation of his constitutional rights.  Accordingly, Defendants Arnold, Benson, and Wagner are entitled to summary judgment on this claim.

V.      **Denial of Medical Care**

Finally, to the extent Sturgis sought to bring a separate claim for the denial of medical care while he was on Staff Alert, his claim also fails. To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).

Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

After a serious medical need is established, a successful claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "Actual knowledge or awareness on the part of the alleged inflicter … becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

Sturgis cannot demonstrate either that there was a serious medical need nor that any defendant was deliberately indifferent. Defendants Townsend, Arnold, and Benson, as well as Officer Lavin, Lt. Smith, and RN Job, all attest that they did not see that Sturgis had any visible injuries, such as the bleeding and bruising he now alleges. Furthermore, Sturgis declined Sgt. Benson's offer of medical attention immediately after the incident, and declined a vital check with medical on his last day on Staff Alert. ECF No. 29-7 at ¶ 5; ECF No. 29-5 at 19. Furthermore, RN Job did not receive any medical complaints from Sturgis during RN Job's three daily rounds while Sturgis was on Staff Alert. *See* ECF No. 29-8 at ¶ 5. Thus, the record cannot support a finding that Sturgis had a serious medical need, nor that any defendant was indifferent to it. A claim for deliberate indifference cannot be maintained against Defendants and they are entitled to summary judgment on this claim.

**Conclusion**

For the foregoing reasons, Defendants' Motion is granted.[5]  The Amended Complaint is dismissed as to Warden Weber.  Summary Judgment is entered in favor of Officer Townsend, Chief Arnold, Sgt. Benson, and Lt. Wagner.  A separate Order follows.


January 19, 2023                                      /s/
Date                                 Stephanie A. Gallagher
                                     United States District Judge

---

[5] As Defendants' Motion will be granted for the foregoing reasons, the Court will not address their remaining arguments.